UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| PAULA B. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-500-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| LEXINGTON-FAYETTE URBAN COUNTY | ) | |
| GOVERNMENT DEPARTMENT OF | ) | **MEMORANDUM OPINION AND ORDER** |
| PUBLIC WORKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**       **       **       **       ****

This matter is before the Court on Defendants' Lexington-Fayette Urban County Government ("LFUCG"), Dewey Crowe, George Dillon, Stephanie Northington, Kay Lail Bryant and Leslie Jarvis' (collectively, "Defendants"), motion for summary judgment [Record No. 54]. Plaintiff Paula Brown ("Brown") has responded [Record No. 66], Defendants have replied [Record No. 71], and this motion is now ripe for decision. For the reasons stated herein, the motion for summary judgment will be granted in part and denied in part.

**I.   BACKGROUND**

Brown is an African-American female who was employed by LFUCG from 2001 to 2008. Brown's claims arise from her employment with LFUCG in the Division of Building Inspection. Brown alleges that she was the victim of racial discrimination and harassment during her tenure with LFUCG. Brown also avers that LFUCG employees retaliated against her when she reported various alleged violations of law on several occasions.

During the events at issue in this lawsuit, Dewey Crowe was the Director of Building Inspection. Kay Bryant was a staff assistant, George Dillon was an inspector and Stephanie Northington was a staff assistant, and later, administrative specialist. All Defendants worked in the Division of Building Inspection.

LFUCG hired Brown in April 2001 as a staff assistant in the Division of Sanitary Sewers. In November 2003, she was transferred to the Division of Building Inspection as a staff assistant. In this position, Brown reported to supervisor Peggy Denham. In 2006, Brown was promoted to staff assistant senior and in 2007 was moved to the front counter in a "desk help" position. Brown remained in that position until her termination in 2008.

Brown discusses a number of incidents in her complaint and response to the motion to summary judgment, which she claims proves that she was harassed, discriminated against, and retaliated against. Brown states that her supervisor, Peggy Denham, openly discussed her disapproval of interracial relationships with Brown, and that when Denham discovered that Brown was involved in an interracial relationship, she began to treat Brown "differently."[1] [Sec. Am. Compl. 8, Record No. 37.]

Brown stated in her complaint that she reported "various work rule infractions, including employees who failed to work their full scheduled workday as they falsely reported," but that Defendants

---

[1] Denham is not a named Defendant to this lawsuit.

2

did not take her reports seriously, and, in fact, issued Brown a written reprimand for reporting her coworkers' misconduct and reassigned Brown to different job duties. [Sec. Am. Compl. 8, Record No. 37., and Resp. Mot. Summ. J. 4, Record No. 66.]

Brown also discusses a variety of other incidents in her complaint and the response to the motion for summary judgment which form the bases of her causes of action against Defendants. For example:

- Defendant Northington pointed sharp end of a pencil at Brown while they were secluded in a storage closet;

- When Brown was temporarily confined to a wheelchair, her fellow employees were instructed not to offer her any assistance;

- Defendants ordered Brown to trim her plants but did not order non-African-American employees to trim their plants;

- Defendants falsified an Occupational Safety and Health Administrative ("OSHA") report with the Kentucky Department of Labor, which Brown refused to sign, and eventually filed a complaint regarding LFUCG's OSHA compliance with the Kentucky Department of Labor;

- Defendants required Brown to attend Employee Assistance Programs as punishment for filing complaints and grievances;

3

- Brown was required to report to Northington each time Brown needed to leave her work station, including to use the restroom;

- Defendants required Brown to perform job duties which were excessive and burdensome; and

- Defendants encourage and promote "improper treatment" of employees.

Brown alleges that her complaints to Defendants, as well as formal complaints to OSHA and the EEOC, resulted in her suspension and eventual termination.

Defendants have stated that Brown was suspended and eventually terminated based on a series of incidents documented in her personnel file and submitted in support of their motion for summary judgment. Brown's supervisors gave her documented oral and written warnings for insubordination, inefficiency, and inciting verbal altercations with fellow employees.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party "cannot rest on its pleadings, but must identify specific facts supported

4

by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997).  A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In considering a motion for summary judgment, the Court must construe the facts in the light most favorable to the nonmoving party.  *Id*. at 255.

**III. DISCUSSION**

Brown's causes of action, as listed in the second amended complaint, and the Court's ruling on each, regarding the motion for summary judgment, are listed below:

**a)   First Cause of Action: KRS 61.101-103 and Kentucky Labor Law.**

Brown admits that the individual defendants cannot be held liable under Kentucky labor law or Kentucky's Whistleblower Statutes, KRS 61.101-103. [Resp. Mot. Summ. J. 7, Record No. 66.] Accordingly, the first cause of action, with respect to the individual defendants, will be dismissed.

The remaining cause of action against LFUCG pursuant to KRS 61.101-103 must also be dismissed due to Brown's failure to establish a prima facie case.

> In order to demonstrate a violation of KRS 61.102, an employee must establish the following four elements: (1) the employer is an officer of the state; (2) the employee

5

is employed by the state; (3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and (4) the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure. The employee must show by a preponderance of evidence that "the disclosure was a contributing factor in the personnel action."

*Davidson v. Com., Dept. of Military Affairs,* 152 S.W.3d 247, 251 (Ky. Ct. App. 2004)(footnote omitted). Defendants admit that Brown meets the first two elements of the cause of action. Defendant argues that Brown's claim possibly fails on element three, and certainly fails on element four, the causation element. Brown states in her complaint that her cause of action pursuant to KRS 61.101-103 is based on retaliation and harassment she suffered "because of her filing a complaint against her employer with the Kentucky Department of Labor." [Sec. Am. Compl., 13, Record No. 37.] The Court assumes that the complaint Brown is referring to is the OSHA grievance Brown filed on June 14, 2008. It is unclear, however, exactly which of Defendants' actions Brown is alleging were in retaliation for filing the grievance, but it appears that her suspension, termination, and/or the alleged harassment she suffered are part of the claim.

Brown's suspension commencing June 3, 2008 cannot possibly have been in retaliation for the OSHA grievance because Brown did not file the grievance until eleven days later, on June 14, 2008. Brown's suspension pending termination occurred more than six

months after filing the OSHA grievance.  During that six month time period there were several instances of inefficiency and insubordination that LFUCG cites as grounds for Brown's termination. [Mot. Summ. J., Ex. B, Record No. 54.]  The time period alone, without more, makes the nexus between the OSHA grievance and Brown's final suspension and termination too attenuated.  Brown has not offered any evidence to demonstrate that the OSHA grievance "was a contributing factor in the personnel action," and, therefore has failed to satisfy the fourth element of the cause of action.

Furthermore, Brown has failed to adequately describe what "harassment" she suffered in retaliation for filing the OSHA grievance.  Brown has alleged multiple harassing incidents, but has not offered dates for all of the incidents to show whether they occurred prior to, or as a result of, the grievance.  Additionally, Brown has failed to causally connect any of these incidents with her OSHA grievance.  She has not alleged that the harassing supervisors ever mentioned the grievance to her during the course of their negative and confrontational interactions.  Brown's complaint and response to the motion for summary judgment are completely void of any proof to causally connect her supervisors' behavior with the OSHA grievance she filed.

**b)   Second, Third, Fifth and Sixth Causes of Action: First Amendment of the United States Constitution and Section 1 of the Kentucky Constitution/Retaliation following OSHA grievance and EEOC complaints.**

Section 1 of the Kentucky Constitution encompasses a free speech clause which is co-extensive with, and provides no greater protection than, the First Amendment of the United States Constitution. *McDonald v. Ethics Committee of the Kentucky Judiciary*, 3 S.W.3d 740, 743 (Ky. 1999); *accord Dennison v. Murray State University*, 465 F. Supp.2d 733, 746 (W.D.Ky. 2006). These two causes of action each (for the EEOC complaint and OSHA grievance) are duplicative and will be analyzed as one under federal First Amendment principles. Furthermore, because the same legal analysis applies to both the OSHA grievance and the EEOC complaints, and because the Court ultimately reaches the same conclusion as to both, these four separate claims will be analyzed together.

An employee must establish three elements in order to state a First Amendment retaliation claim: (1) the employee must show that his speech is protected by establishing that the speech touches on a matter of public concern and by demonstrating that his interest in the speech outweighs the government's interest in preventing the speech; (2) the employee must establish that the employer's adverse action would "chill an ordinary person in the exercise of his First Amendment rights[;]" and (3) the employee "must present sufficient evidence to create a genuine issue as to whether his speech was a

8

substantial or motivating factor in the employer's decision to discipline or dismiss." *See v. City of Elyria*, 502 F.3d 484, 492 (6th Cir. 2007) (citations omitted).

Assuming, *aguendo*, that Brown's grievance with OSHA is protected speech, satisfying the first element of a First Amendment retaliation claim, Brown has not presented sufficient evidence to create a genuine issue regarding the third element.

The Court agrees with Defendants that Brown's complaint is "so replete with facts" that it is "difficult to assess which facts apply to which alleged causes of action." [Mot. Summ. J., 9, Record No. 54.] It is also difficult to ascertain the timeline of events from Brown's complaint and response to the motion to summary judgment. The Court, therefore, will attempt to piece together, as accurately as possibly, what Brown's arguments and supporting facts appear to be.

Brown filed her first EEOC complaint on April 4, 2008, her OSHA grievance on June 14, 2008, and her second EEOC complaint on July 7, 2008. Thus, the Court, reading the complaint in the light most favorable to Brown, will assume, *arguendo*, that the adverse action(s) Brown alleges occurred as a result of filing the OSHA grievance and EEOC complaints are one or more of the following: Brown's suspension without pay on June 3, 2008; unreasonable workload expectations; Defendants' alleged unfair, unequal, ridiculing, and/or harassing treatment of Brown; and Brown's

9

eventual termination.[2]

Brown has failed to establish any genuine issues of fact which create a causal link between her protected speech and an adverse employment action. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1997). ("[T]he burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct . . . was a 'motivating factor'" in his employer's adverse employment action.)

### 1) The June 3, 2008 Suspension

Brown admits in her deposition that she had a verbal altercation with her supervisor, Dewey Crowe, on May 1, 2008 [Mot. Summ. J., Exh. A, Brown Dep., 139-42, Record No. 54]. Defendants characterize this incident as an "incident of insubordination," while Brown characterizes this event as "just another incident in the continuum of ongoing harassment and hostile work environment issues." Brown states that Crowe shook his finger at her while yelling at her and "positioning his body in a threatening manner." [Res. Mot. Summ. J. 9, Record No. 54]. Brown admits in her deposition, however, that during the altercation with Crowe he

---

[2]Brown's suspension in May, July, August, September, and part of October, 2008 and Defendant's alleged refusal to allow Brown to return to work until October 13, 2008, are not adverse employment actions because Brown was ultimately paid her usual wage and benefits for the leave period. *Peltier v. U.S.*, 388 F.3d 984, 988 (6th Cir. 2004) ("We have held that 'a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action.'")(citation omitted)(emphasis in original).

repeatedly instructed her to return to her work station and she continued to argue with him regarding the substance of their dispute. [Mot. Summ. J., Exh. A, Brown Dep., 139-42, Record No. 54]. She also admits that once she returned to her work station she got up twice more in the next few minutes to go talk to another supervisor and continue the argument with Crowe. [*Id.* at 140-42.] This testimony is consistent with the Disciplinary Action Form Defendants filed against Brown, which instituted the suspension without pay beginning on June 3, 2008. [Mot. Summ. J., Exh. B, Record No. 54.] The Court finds that Brown's account of the altercation with Crowe is essentially the same as Defendants' account, and correlates with Defendants' claim of insubordination. Therefore, the Court finds that Brown has raised no genuine issue as to whether Defendants' decision to suspend Brown without pay was in retaliation for filing the first EEOC complaint because the suspension was directly related to Brown's acts of insubordination, as reported by Brown.

   **2)   Defendants' unfair, ridiculing, and/or harassing treatment of Brown.**

   Brown alleges that Crowe "exhibited belligerent behaviors toward [her] for any little thing and she was fearful of him[,]" engaged in harassment, and created a hostile work environment after she filed the OSHA grievance and the EEOC complaints. [Res. Mot. Summ. J. 8-9, Record No. 66.] Brown does not specify what these "belligerent behaviors" were, other than the incident described

above, nor does Brown causally connect any of Crowe's alleged "belligerent behaviors" to her OSHA grievance or EEOC complaints.

Brown vaguely alludes to suffering "harassment" and a "hostile work environment" as a direct result of filing the OSHA grievance and EEOC complaints.  It is unclear what incidents, specifically, comprise this "harassment" and "hostile work environment."  Brown states that in June 2008 "she received numerous harassing phone calls from Northington," that she was required to report to Northington each time she needed to leave her work station to use the restroom, and that she was required to attend Employee Assistance Programs ("EAPs") as punishment for filing her grievance and complaints.[3]  Assuming, *arguendo*, that any of these actions are harassment or create a hostile work environment, and assuming, *arguendo*, that they constitute an adverse employment action, Brown fails to show that these incidents were "motivated by" the OSHA grievance or EEOC complaints that she filed in the spring and summer of 2008.  Brown does not provide any facts that create a causal link between Northington's harassing telephone phone calls and Brown's grievance or complaints, other than temporal proximity.

[W]hen opposing a motion for summary judgment, the

---

[3] It is unclear from the complaint whether Brown is alleging that the EAPs were in retaliation for internal LFUCG grievances and complaints she filed, the OSHA grievance, the EEOC complaints, or all of the above.  For the purpose of this analysis, the undersigned will assume that Brown alleges that at least some of the EAPs were ordered in response to the OSHA grievance and EEOC complaints she filed.

> nonmoving party may not rely on the mere fact that an
> adverse employment action followed speech that the
> employer would have liked to prevent. Rather, the
> employee must link the speech in question to the
> defendant's decision to dismiss her. That is, [Brown]
> must present evidence sufficient to create a genuine
> issue that her speech caused [the adverse action].

*Bailey v. Floyd County Bd. of Educ. By and Through Towler*, 106 F.3d

135, 145 (6th Cir. 1997) (citations omitted). Taking the facts in

the light most favorable to Brown, it is impossible for the Court

to find that the telephone calls from Northington to Brown in June

2008 were motivated by Brown's filing the OSHA grievance and/or

EEOC complaint. Brown does not provide the substance of these

telephone conversations or indicate that they were in any way

related to the OSHA grievance or EEOC complaint.

Likewise, Brown completely fails to produce even a scintilla

of evidence to show that the requirement that she inform

Northington when she would be away from her work station, or the

repeated orders to attend the EAPs, were connected to her OSHA

grievance or EEOC complaints. Brown's own deposition testimony

reveals that she had ongoing conflicts with her co-workers and

supervisors. [Not. Filing. Ex., Ex. "Brown Depo.", Record No. 67

and Mot. Summ. Jud., Ex. A, Record No. 54.] These conflicts appear

to be the source of both the requirement that she report to

Northington prior to leaving her work station and the repeated

visits to the EAP. Brown has offered no evidence to the contrary.

13

Brown's response includes multiple references to "Behavioral Medicine's Progress Note[s]" and other notations by a therapist/social worker regarding her complaints of conflicts and maltreatment at work. At least four of these notations, however, were recorded in 2006, two years prior to Brown filing her OSHA grievance and EEOC complaints. [Res. Mot. Summ. J. 8-9, Record No. 66.] Thus, these alleged incidents of harassment, conflict, or ridicule, as recorded in her progress notes, cannot have been "motivated by" a grievance or complaint filed two years later. Thus, Brown has not raised any genuine issue of material fact regarding harassment, ridicule or other maltreatment which was causally connected to her OSHA grievance and EEOC complaints.

### 3)   Defendant's unreasonable workload expectations

Brown seems to allege in her complaint that part of the retaliation for her OSHA grievance and EEOC complaints was an unreasonable workload which appeared after her suspensions in May and June 2008. Brown states that her usual work was not completed in her absence, so that when she returned to work she was expected to complete a very high volume of work in a short amount of time. When she requested assistance from Northington, Northington refused to assist Brown with this extra workload.

Again, Brown offers no causal link to connect the heavy workload that accumulated in her absence with retaliation motivated

by her OSHA grievance or EEOC complaint(s).[4]   Brown's only
complaint is that work accumulated during her several-week absence
in the spring of 2008 and she was not provided assistance in
completing the work.  The fact that work accumulated during Brown's
leave is unsurprising, and, without more, does not create a genuine
issue of fact as to whether the accumulation of work was somehow
motivated by Brown's filing of a grievance or complaint.
Furthermore, Brown fails to offer any evidence showing that the
refusal of her supervisor to assist her in completing the work was
in any way related to, or because of, her grievance or complaints.

    **4)   Brown's termination.**

Brown has failed to demonstrate that there is any causal
connection whatsoever between her grievance and complaints and her
eventual termination.  She submitted no evidence that even suggests
such a connection.  Contrastingly, Defendants submitted a signed
"Disciplinary Action Form" [Mot. Summ. J., Exh. B, Record No. 54]
which details the initial action Defendants took regarding the
incident between Crowe and Brown on May 1, 2008.  According to
Defendants, this altercation was the major impetus in the decision
to terminate Brown; however, there were multiple other incidents
which led to the termination.  The Civil Service Commission Charges

---

[4] The complaint is not clear as to whether the heavier
workload occurred immediately upon Brown's return to work but
then subsided or if it continued for some time, and, thus, forms
part of the basis for Brown's claim of retaliation upon her
filing of the second EEOC complaint.

against Brown, which the Civil Service Commission ("the Commission") utilized in making the decision to terminate Brown (after a hearing) outline the specific acts that led to her firing. [Mot. Summ. J., Ex. C, Record No. 54.] The charges include five counts of insubordination and four counts of inefficiency, arising from four specific, dated incidents and a "chronic inability and/or unwillingness to perform the functions of her position[.]" [*Id.*] The Commission held a hearing in April 2009 and determined that the evidence LFUCG presented regarding counts I, II, IV, and V provided sufficient justification for Brown's termination.[5]

All of this is to say that Defendants documented each incident of insubordination and inefficiency which led to the termination, that these incidents occurred over the course of many months, that Brown was aware of her right to appeal her termination and did so, and that the Commission carefully considered the evidence against Brown (even finding that the government did not sustain their burden of proof on one of the counts against her) and still found that her behavior warranted termination. Brown has not offered any evidence which contradicts LFUCG's claims of insubordination, other than to state that she felt she was being treated unfairly or harassed by supervisors. Brown even admitted in her deposition that she did not return to her work station and remain there when

---

[5] Brown was represented by counsel at this hearing. She presented evidence and cross-examined witnesses.

instructed to do so during the altercation on May 1, 2008 with Crowe. Furthermore, Brown has completely failed to offer any evidence linking her OSHA grievance or EEOC complaints to her termination. The grievance and complaints were filed in the spring and summer of 2008, but Brown was not terminated until December 31, 2008. Brown does not dispute that she had at least one major altercation with her supervisor. Thus, the Court finds that Brown has not demonstrated that a genuine issue exists as to whether the grievance and complaints she filed were a substantial or motivating factor in her termination.

      **c)**     **Fourth Cause of Action: Equal Employment Opportunity Act of 1972/Retaliation for contacting the EEOC.**

Defendants argue, and Brown admits, that although the fourth cause of action is styled as violations of the Equal Employment Opportunity Act of 1972, Brown is, in substance, claiming unlawful retaliation under Title VII, 42 U.S.C. § 2000e-3. Defendants do not address the substance of this retaliation claim, but maintain that it should be dismissed because it duplicates either Brown's tenth cause of action or her fifth and sixth causes of action. Brown's response to the motion for summary judgment did not address anything substantive related to Defendant's arguments on these claims.

Brown's tenth cause of action relates to acts of harassment and the creation of a hostile work in environment in contravention of Title VII. [Sec. Am. Compl., 17, Record No. 37.] The tenth

cause of action does not mention retaliation.   Thus, the Court finds that the fourth cause of action and the tenth cause of action are not duplicates.   Likewise, the Court finds that the fifth and sixth causes of action are pursuant to the United States Constitution and the Kentucky Constitution, not Title VII. Although these causes of action, and the elements necessary to prove a prima facie case in each are very similar, these are not the same causes of action.   The Court, therefore, finds that the fourth cause of action is not identical to the fifth and sixth causes of action and cannot be dismissed on that ground.

     In response to the tenth cause of action, which is based on Title VII, Defendants correctly argue that Title VII does not provide for individual liability, and, thus, the Title VII claims against the individual defendants must be dismissed (see section "g," below).   Because the Court finds that Brown brings the fourth cause of action pursuant to Title VII, and because Title VII does not provide for individual liability, the fourth cause of action against the individual defendants must be dismissed.   *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). ("[A]n individual employee/supervisor . . . may not be held personally liable under Title VII.")

     To maintain a Title VII claim for retaliation, a plaintiff must prove that: (1) she engaged in Title VII-protected activity; (2) Defendants knew she engaged in the protected activity; (3)

18

Defendants subsequently took an adverse employment action against her; and (4) the adverse action was causally related to the protected activity. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). The burden of establishing a prima facie case is not onerous. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "Protected activity" includes opposing any employer practice that is unlawful under Title VII or participating in a Title VII investigation. *Johnson v. University of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000). Temporal proximity may constitute evidence of a causal connection when:

> an adverse employment action occurs very close in time
> after an employer learns of a protected activity . . . .
> But where some time elapses between when the employer
> learns of a protected activity and the subsequent adverse
> employment action, the employee must couple temporal
> proximity with other evidence of retaliatory conduct to
> establish causality.

*Mickey*, 516 F.3d at 525.

Brown has not submitted sufficient evidence on her prima facie case to allow this cause of action to go forward, for the same reasons as listed in section "b," above. Brown will therefore be ordered to show cause as to why her fourth cause of action as to Defendant LFUCG should not be dismissed.

**d)  Seventh Cause of Action: First Amendment of the United States Constitution/Freedom of Association.[6]**

There are two distinct types of constitutionally-protected association: "(1) expressive association, protected by the First Amendment, and (2) freedom of intimate association, a privacy interest derived from the Due Process Clause of the Fourteenth Amendment but also related to the First Amendment." *Anderson v. City of LaVergne*, 371 F.3d 879, 881 (6th Cir. 2004).  Defendants argue that Brown is attempting to bring a claim based on intimate association under the First Amendment, which is not a legally cognizable claim.  In the alternative, Defendants argue that to the extent Brown brings a claim for expressive association, she has failed to establish a claim.  Brown responds by arguing that her claim "rests not on interference from LGUCG in her intimate relationships.  Rather, her claim rests on her open acknowledgment,

_____

[6] Brown seems to have confused multiple claims in her seventh cause of action.  First, Brown initially pled this cause of action as though she were claiming an interference with an intimate relationship, pursuant to the due process clause, yet she brought the action under the First Amendment.  When Defendants identified this anomaly, Brown insisted that she did, in fact, intend to bring an expressive association claim under the First Amendment.  Both Brown and Defendants go on to argue in their briefs about whether the government's restraint on speech in this case should be reviewed under rational basis review or intermediate scrutiny.  Neither party, however, seems to notice that Brown is not claiming that there was a restraint on her right of expressive association, but, rather, that she was retaliated against for engaging in expressive association.  Thus, for the sake of creating a complete record, the Court will analyze why Brown's claim fails, to the extent she is either claiming governmental restraint on expressive association or retaliation for her expressive association.

through her relationship, of her belief that interracial relationships are perfectly acceptable." [Res. Mot. Summ. J. 11, Record No. 66.]

The Supreme Court has "recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). The right to associate provided under the First Amendment is usually termed "expressive association."

Freedom of expressive association under the First Amendment is analyzed using analysis identical to that in the First Amendment freedom of speech context. *Thaddeus-X v. Blatter*, 175 F.3d 378, 390 (6th Cir. 1999). Brown argues that her freedom to associate with a white man in a romantic relationship is a matter of public concern, because it is directly related to the issue of racism. Defendants disagree, arguing that Brown's relationship with a white man is a private matter of little or no concern to the community at large. A governmental restraint on association of public concern is analyzed under intermediate scrutiny, while a restraint on association that is not of public concern is analysis under rational basis review.

The Court, however, need not decide which level of review will apply in this case because Brown has not put forth any evidence of a governmental restraint on her freedom to associate with a white

21

man or otherwise support interracial relationships.  Brown has alleged, at most, and without sufficient support, that her supervisor, Peggy Denham, retaliated against her when she revealed to Denham that she (Brown) was romantically involved with a white man.  Denham is not a named Defendant in this action.  Brown has offered vague allegations regarding retaliation she suffered as a result of her involvement with a white man, but she has not been clear regarding whether the source of this retaliation was only Denham or other LFUCG employees, including the named Defendants.  Brown has not offered any evidence of a policy, rule, custom, or practice of LFUCG prohibiting their employees from expressive association which supports interracial dating.

Furthermore, to the extent Brown is claiming that she was retaliated against for her expressive association in support of interracial relationships, she has totally failed to offer any evidence which creates a genuine issue of fact as to whether the retaliation occurred.  Brown cannot rest on her pleadings alleging the retaliation to be true, but must offer something more.  *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997).  For the same reasons that Brown's retaliation claim under the First Amendment freedom of speech clause cannot survive the motion for summary judgment (explained in detail in section "b," *supra*), including lack of evidence of "but-for" causation, any retaliation claim pursuant to the First Amendment freedom of association clause must also be

dismissed.

**e)   Eighth Cause of Action: Lexington-Fayette Municipal Code, Sections 21-49.**

Brown claims that Defendants are liable for violations of the "Lexington-Fayette Municipal Code, Sections 21-49," but she states no basis for this alleged liability. Brown does not allege in her second amended complaint that the municipal code itself creates liability or that liability arises under a separate legal doctrine for failure to follow the code. It is only in Brown's response to the motion for summary that she alleges that Defendants' failure to follow the municipal code was a violation of her due process rights. Brown cannot create what is essentially a new cause of action, not previously pled, in her response. Therefore, this cause of action must be dismissed.

**f)   Ninth Cause of Action: Kentucky Tort Law.**

Brown organized her response to the motion for summary judgment according to the section headings Defendants utilized in their motion, and responded to each argument under the corresponding section heading. In Section VII of the motion for summary judgment entitled, "The Doctrine of Sovereign Immunity Bars the Plaintiff's Kentucky Tort Claims Against the Government," Defendants make the argument that the section heading suggests, but also argue that Brown's intentional infliction of emotional distress claims should not go forward because they are "subsumed by her Title VII claims" under Kentucky law. [Mot. Summ. J., 21,

Record No. 54.] In Brown's response, she includes the section heading "The Doctrine of Sovereign Immunity Bars the Plaintiff's Kentucky Tort Claims Against the Government," and below, writes only two words, "Plaintiff admits." [Res. Mot. Summ. J. 13, Record No. 66.] It is not clear whether Brown is admitting all of the arguments set forth in Section VII of Defendant's motion, or only the argument suggested in the title to Section VII. Therefore, because the Court is certain that Brown admits that the doctrine of sovereign immunity bars her tort law claim against LFUCG, the ninth cause of action will be dismissed against LFUCG.

The Court's uncertainty regarding the extent of Brown's admission as to the ninth cause of action currently makes summary judgment inappropriate as to the individual defendants. Defendants argued in their motion for summary judgment that Brown's Title VII claims already provide a remedy for emotional distress, thus, the ninth cause of action against the individual defendants must be dismissed. Defendants cite one Kentucky case in support of their argument, *Gryzb v. Evans*, 700 S.W.2d 399 (Ky. 1985), but that case addresses the interplay between an intentional infliction of emotional distress claim and a claim brought pursuant to a Kentucky state statute, not a Title VII claim. Defendants did not cite any case law to support their argument that Brown should not be permitted to bring both a Title VII claim and an intentional infliction of emotional distress claim under common law, and the

24

Court has not uncovered any case law to that effect.  Furthermore, Defendants correctly argue that the individual defendants cannot be held liable under Title VII (see section "g," below).  Thus, it is illogical to argue that Brown cannot bring the ninth cause of action pursuant to Kentucky tort law because it duplicates the tenth cause of action under Title VII, yet then argue that she has no cause of action against the individual defendants under Title VII.  Therefore, summary judgment will be denied regarding the intentional infliction of emotional distress claim against the individual defendants.

The Court notes, however, that although Defendants failed to raise this argument, Brown cannot sustain a prima facie case of intentional infliction of emotional distress against the individual defendants.  A claim for intentional infliction of emotional distress has four elements; the second of the four elements is that "the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality . . ." *Morgan v. Bird*, 289 S.W.3d 222, 228 (Ky. Ct. App. 2009); *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984).  This is a very high standard to satisfy.  For example, Kentucky courts declined to find that a nurse told a patient who had just delivered a stillborn baby to "shut up," or a citizen who erected a billboard in his yard declaring that his neighbor was a child molester, acted outrageously, intolerably or "beyond all decency." *Humana of*

25

*Kentucky, Inc. v. Seitz*, 796 S.W.2d 1,3 (Ky. 1990); *Allen v. Clemons*, 920 S.W.2d 884 (Ky. Ct. App. 1996). The Kentucky Supreme Court "stress[ed] that 'major outrage is essential to the tort; the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.'" *Stringer v. Wal-Mart Stores, Inc.* 151 S.W.3d 781, 791-92 (Ky. 2004)(quoting Restatement (Second) of Torts § 46(1) cmt. f (1965)).

Brown has presented very little actual, admissible evidence of maltreatment by the individual defendants. Viewing all of the evidence in the light most favorable to Brown, even evidence which has questionable admissibility, Brown describes conduct that amounts to nothing more than a couple of verbal altercations and unpleasant office policies that included having to trim plants and ask permission to use the restroom. This conduct is not so "intolerable" that it offends "decency and morality," when it is understood in the context of other decisions regarding claims of intentional infliction of emotional distress.

Because the Court is considering a *sua sponte* dismissal of this claim against the individual defendants, Brown will be ordered to show cause as to why the claim should not be dismissed.

**g)     Tenth Cause of Action: Violations of Title VII for harassment and a hostile work environment.**

Defendants argue that the individual defendants cannot be held liable for violations of Title VII, and Brown appears to admit the

same in her response. [Res. Mot. Summ. J. 7, Record No. 66.] The
Sixth Circuit Court of Appeals has held that "an individual
employee/supervisor . . . may not be held personally liable under
Title VII." *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th
Cir. 1997). Accordingly, the tenth cause of action will be
dismissed as to the individual defendants.

Brown has also failed to meet the elements of a prima facie
case for a hostile work environment based on race. The Sixth
Circuit has held that:

> [i]n order to establish a prima facie case of hostile
> work environment based on either race or religion, [a
> plaintiff] must establish the following five elements:
>
> 1. He was a member of a protected class;
>
> 2. He was subjected to unwelcomed racial and/or religious
> harassment;
>
> 3. The harassment was based on race or religion;
>
> 4. The harassment had the effect of unreasonably
> interfering with Hafford's work performance by creating
> an intimidating, hostile, or offensive work environment;
> and
>
> 5. The existence of employer liability.
>
> See *Risinger v. Ohio Bureau of Workers' Compensation*, 883
> F.2d 475, 484 (6th Cir. 1990). In determining whether an
> environment is one that a reasonable person would find
> hostile or abusive and that the plaintiff in fact did
> perceive to be so, courts look at all of the
> circumstances, including:
>
>> [T]he frequency of the discriminatory conduct;
>> its severity; whether it is physically
>> threatening or humiliating, or a mere
>> offensive utterance; and whether it
>> unreasonably interferes with an employee's

27

work performance.

> *Harris*, 510 U.S. at 23, 114 S.Ct. 367; *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 251 (6th Cir. 1998). "A recurring point" in the Supreme Court's opinions is that " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' " and that "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, ----, 118 S.Ct. 2275, 2283-84, 141 L.Ed.2d 662 (1998) (citations omitted).

*Hafford v. Seidner*, 183 F.3d 506, 512 -513 (6th Cir. 1999) (third alteration in original).

As an African-American, Brown meets the first requirement, being a member of a protected class. Defendants correctly state that Brown has failed to meet the second and third elements of a prima facie case of a hostile work environment. Brown offers bare assertions of a multitude of incidents at LFUCG that she found offensive or unfair to her. These incidents include, among others, being treated "differently" after her supervisor discovered Brown was involved in an interracial relationship, being assigned a burdensome workload, the verbal altercation with Dewey Crowe (in which Crowe wagged his finger at Brown), having a pencil pointed at her face, receiving harassing telephone calls, having to ask permission to leave her work station, and being asked to trim her plants. Many of these assertions are mentioned briefly in the complaint with no additional detail provided in Brown's response to the motion for summary judgment or its supporting documents. Brown

has failed to demonstrate that any of these events were more than "isolated incidents," typical of the type of workplace strife that often occurs when incompatible personalities are forced to work together for extended periods of time.  *Id.*  She has particularly failed to show that being assigned to a heavy workload, being asked to trim her plants, or being required to ask permission prior to leaving her work station was harassing, offensive, or threatening in any way.  *Id.*

Even assuming Brown has presented evidence of unwelcome harassment, and satisfied the second element of a prima facie case of a hostile work environment, she has utterly failed to connect any of these events with her race, in order to satisfy the third element.  The only allegations which Brown connects specifically to her race are that a non-African-American, less qualified employee was promoted instead of Brown; that she was asked to trim her plants, although non-African-American employees were not asked to trim their plants; that Brown was treated differently after Peggy Denham discovered that she (Brown) was dating a white man; and that only Brown's overtime pay was withheld, though it was eventually paid. [Mot. Summ. J., Ex. G, 15, Record No. 54.]  At her deposition, Brown stated that she was sure she was the victim of racial harassment, saying, "I automatically know.  Usually I can tell real quick if a person is prejudiced, and I don't even see it. I try not to see it.  But sometimes I can just tell." [Mot. Summ.

J., Exh. A, Brown Depo. 123, Record No. 54.]

The fact that Brown can "just tell" that someone is racist is insufficient to create a genuine issue of material fact as to whether Brown was subject to a hostile work environment based on her race. In reaching the conclusion that a hostile work environment did not exist for Brown, the Court has considered the "totality of the circumstances" including

> 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance.' . . . '[t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive.'

*Jackson v. Quanex Corp.,* 191 F.3d 647, 658 (6th Cir. 1999) (quoting *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993) and *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)). Brown is able to connect only a very few of her allegations to her race. The promotion of an employee of another race over Brown is not harassment at all. Brown does not expound on her allegation that she was the "only one" who did not receive overtime pay in a timely fashion, thus, she has failed to demonstrate that this was because of her race (and not because of some other innocuous reason, such as a clerical error), particularly due to the fact that Brown states that during at least part of her employment, their were other African-American employees in her division. Being required

30

to trim her plants, even though non-African-American employees were not required to trim their plants, is not conduct "that a reasonable person would find hostile or abusive." *Id.* Finally, the fact that Denham treated Brown "differently" and as though she was "worthless" after finding out that Brown was involved in an interracial relationship, does not rise to the level of conduct "that a reasonable person would find hostile or abusive." The fact that Denham held and expressed a belief that Brown found immoral or offensive is insufficient to create a cause of action based on hostile work environment. The Court, unfortunately, cannot order employers and supervisors to "be nice" or to give up their personal prejudices; the Court can only order that employers and supervisors treat everyone equally in the workplace, regardless of race. In this instance, Brown has failed to present sufficient evidence to demonstrate that she was treated unequally or subject to harassment because of her race, and that this harassment rose to the level of creating a hostile work environment.

**h)   Eleventh Cause of Action: 42 U.S.C. § 1983.**

In the complaint, Brown bases her § 1983 action on the constitutional violations alleged in the "Second, Fourth, Fifth, Seventh and Tenth Causes of Action." [Sec. Am. Compl., 17, Record No. 37.] The fourth and tenth causes of action are pursuant to Title VII and not constitutional, thus, they cannot form the basis of a § 1983 action. The Court has determined herein that Brown

31

does not have a viable constitutional claim pursuant to her second, fifth or seventh causes of action.  Therefore, Brown has failed to demonstrate that she suffered any violations of her constitutional rights which give rise to a § 1983 action.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) ("[P]roper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation . . . .").  As a result, summary judgment must be granted regarding Brown's eleventh cause of action.

## IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' motion for summary judgment [Record No. 54] be, and the same hereby is, **GRANTED IN PART** and **DENIED IN PART** as follows:

1) the motion for summary judgment [Record No. 54] is **GRANTED** with respect to the first, second, third, fifth, sixth, seventh, eighth, tenth and eleventh causes of action in Brown's second amended complaint [Record No. 37], in their entirety, the fourth cause of action against the individual defendants and the ninth cause of action against Defendant LFUCG;

2) the motion for summary judgment is **DENIED** with respect to the fourth cause of action against Defendant LFUCG and the ninth cause of action against the individual defendants; and

3) Brown has up to and including April 2, 2010 to **SHOW CAUSE**

why her fourth and ninth causes of action against the individual defendants should not be dismissed; Defendants will have up to and including April 9, 2010 to respond; Brown will have up to and including April 14, 2010 to reply.

This the 26th day of March, 2010.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge