```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON
```

PAULA B. BROWN,                      )
                                     )
     Plaintiff,                      )    Civil Action No. 08-500-JMH
                                     )
v.                                   )
                                     )
LEXINGTON-FAYETTE URBAN COUNTY       )
GOVERNMENT DEPARTMENT OF             )    **MEMORANDUM OPINION AND ORDER**
PUBLIC WORKS, et al.,                )
                                     )
     Defendants.                     )
                                     )

                   **        **        **        **        **

This matter is before the Court on Plaintiff Paula Brown's ("Brown") response [Record No. 86] to the Court's Show Cause Order [Record No. 81], entered March 26, 2010. Defendants have responded [Record No. 94], Brown has replied [Record No. 98], and this matter is ripe for decision. Accordingly, and for the reasons that follow, Brown's fourth and ninth causes of action will be dismissed.

**I.   BACKGROUND**

The facts of this case were fully stated in the undersigned's Memorandum Opinion and Order of March 26, 2010 [Record No. 81] and do not require repetition herein. In that Order, the undersigned granted summary judgment on all claims except the fourth cause of action (Title VII retaliation), against Defendant Lexington-Fayette Urban County Government ("LFUCG"), and the ninth cause of action (intentional infliction of emotional distress ("IIED")), against the individual defendants. The Court ordered that Brown show cause

why these two remaining claims should not be dismissed for failure to present sufficient evidence to support a prima facie case of each.

Brown has responded to the show cause order with various incidents she claims support a prima facie case of each cause of action. Defendants responded, however, that Brown has still failed to meet her burden to evidence a prima facie case for either cause of action. The undersigned agrees with Defendants, and Brown's claims will be dismissed.

## II. DISCUSSION

### A. Fourth Cause of Action: Title VII Retaliation

Brown has completely failed to causally connect her Equal Employment Opportunity Commission ("EEOC") or Occupational Safety and Health Administration ("OSHA") complaints to an adverse employment action, as required to meet the causation element of a prima facie case of Title VII retaliation.[1] *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). Brown relies on the temporal proximity of the filing of the first (April 7, 2008) EEOC complaint and her forty-hour suspension without pay in June 2008 to support her claim that the EEOC complaint caused the

---

[1] To maintain a Title VII claim for retaliation, a plaintiff must prove that: (1) she engaged in Title VII-protected activity; (2) Defendants knew she engaged in the protected activity; (3) Defendants subsequently took an adverse employment action against her; and (4) the adverse action was causally related to the protected activity. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d at 523.

2

altercation with Dewey Crowe and resulting suspension.  Brown has failed to show, however, any actual connection between the altercation with Crowe and the filing of the EEOC complaint.  As the undersigned found in the March 26, 2010 Memorandum Opinion and Order,

> Brown's account of the altercation with Crowe is essentially the same as Defendants' account, and correlates with Defendants' claim of insubordination. Therefore, the Court finds that Brown has raised no genuine issue as to whether Defendants' decision to suspend Brown without pay was in retaliation for filing the first EEOC complaint because the suspension was directly related to Brown's acts of insubordination, as reported by Brown.

[Memorandum Opinion and Order 11, Record No. 81.]  Brown did not offer any arguments or evidence to contradict this finding in her response to the Show Cause Order.  She simply reiterated that Crowe "verbally attacked" her in a "belligerent" and "over-blown" manner.

> The Sixth Circuit Court of Appeals has held that
>
> With regard to the last element, establishment of a "causal connection" between the protected activity and the adverse employment action, "[a]lthough no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation."  In fact, this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.

*DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir. 2004)(citations omitted). Although the incident between Crowe and Brown took place less than one month after Brown filed her first EEOC complaint,

Brown's own account of the altercation is direct evidence which only supports the finding that it was Brown's failure to follow directions which incited the heated and unprofessional reaction of Crowe. The only indirect evidence of a retaliatory motive for Crowe's behavior, or the forty-hour suspension that resulted from this incident, is temporal proximity. Weighed against the direct evidence from Brown's deposition that the altercation arose from Brown's insubordination, temporal proximity is insufficient in this case to support a finding that Brown was yelled at or suspended in retaliation for filing the EEOC complaint. *See Steiner v. Henderson*, 121 F. App'x 622, 626-27 (6th Cir. 2005).

Brown also discusses the alleged harassing phone calls she received from Northington in June 2008, an allegation of "workplace violence," and her involuntary leave with pay, which began in July 2008. As the Court previously held, Brown failed to show any connection whatsoever between the telephone calls from Northington and Brown's EEOC complaint, and she has again failed to do so in her response to the Show Cause Order.

Furthermore, as the Court noted in the Memorandum Opinion and Order, "a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action." *Peltier v. U.S.*, 388 F.3d 984, 988 (6th Cir. 2004). Thus, all of Brown's involuntary leave with pay is not an "adverse employment action" and, therefore, cannot satisfy the

requirements of a claim of retaliation under Title VII.

The additional facts Brown cites as supporting a prima facie case of retaliation under Title VII are likewise deficient. She cites the fact that she was required to report to her supervisor when she would be leaving her work station, even for the purpose of a restroom or smoke break. The evidence Brown submitted in support of this allegation, however, includes a series of e-mails between Leslie Jarvis and John Bryant, which discuss the fact that they insisted Brown's supervisor, Northington, impose this policy on all employees equally. [Resp. Show Cause Order, Ex. AT-8.] Clearly, this proves the opposite of Brown's claim, that she was not singled out or retaliated against, but that the supervisors at LFUCG wanted to ensure that all policies were enforced against all employees equally. *See Hunter v. Secretary of the U.S. Army*, 565 F.3d 986, 997 (6th Cir. 2009) ("With respect to claim (c), Hunter conceded during his deposition that all members of his team were told that if they were going to leave their desks, they needed to leave a note. Hunter's claim (c) was thus not a retaliatory act that singled him out.").

Brown also cites the fact that Northington called her on a sick day and informed Brown that in the future she must speak to a supervisor to inform the office that she would be out on sick leave, although other employees were not required to adhere to this policy, and the fact that other employees were at a picnic or

5

cooking on the day that Brown was working and became involved in the altercation with Crowe. Brown admits in her response, however, that "these facts are not dispositive of retaliation," but argues that they "indirectly" support the fact that Defendants retaliated against Brown for filing the EEOC and/or OSHA complaints. Not only has Brown failed to causally connect these events to her protected activity, but even if she could show a nexus between them, these events do not rise to the level of "adverse employment action." *See Novotny v. Elsevier*, 291 F. App'x 698, 703 (6th Cir. 2008)(holding that closely scrutinizing an employee's calendar, excluding her from e-mails, and referring her to executive coaching did "not qualify as adverse employment actions." The Court further "held that *de minimis* employment actions are not materially adverse and, thus, not actionable.")

Finally, Brown cites e-mails from Kim Asher and Andrea Jones, a May 30, 2008 memorandum, and an e-mail from Christine Wu in further support of her retaliation claim. Assuming, *arguendo*, that all of this evidence is even admissible, it is difficult to decipher exactly how these e-mails and the memorandum support Brown's claim. First, the e-mails from Kim Asher describe an unpleasant work environment and include allegations of mistreatment of Brown, all of which occurred from January to October 2007, and, thus, cannot have been in retaliation for complaints filed in the spring and summer of 2008. Second, Brown has submitted a

6

memorandum which purports to be written by Northington, though Northington denied that she wrote it at her deposition. The memorandum bears the date "May 30, 2008" in the date line, but "November 20, 2008" appears in the upper right-hand corner of the document. Although the conflicting dates are suspicious, this memorandum has no bearing on whether or not Brown has submitted sufficient evidence of a prima facie case of retaliation. Brown argues that this memorandum should bar Defendants from asserting their affirmative defense, however, an affirmative defense is only raised if the plaintiff proves their prima facie case. In this case, the Court finds that Brown has not put forth sufficient evidence to prove her prima facie case.

Lastly, Christine Wu e-mailed Brown to describe a situation which made Wu believe that other employees and supervisors in the office read some of Brown's personal e-mail. Brown offers no evidence to support whether this actually occurred. Even if Brown could support her allegation that this incident occurred, it is not causally connected to her protected activity in any manner, particularly because the alleged e-mail invasion occurred in late November, 2008, over four months after her last EEOC complaint.

Although Brown does not specifically argue in her response to the Show Cause Order that her termination was also in retaliation for the EEOC complaints and OSHA grievance that she filed, it has been part of her claim from the beginning and the Court will

7

briefly address it here. As Brown offered no clear arguments to the contrary, the Court reiterates its findings in March 26, 2010, Memorandum Opinion and Order, which stated:

> . . . Brown has completely failed to offer any evidence linking her OSHA grievance or EEOC complaints to her termination. The grievance and complaints were filed in the spring and summer of 2008, but Brown was not terminated until December 31, 2008. Brown does not dispute that she had at least one major altercation with her supervisor. Thus, the Court finds that Brown has not demonstrated that a genuine issue exists as to whether the grievance and complaints she filed were a substantial or motivating factor in her termination.

[Memorandum Opinion and Order 17, Record No. 81.] "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525. Brown has offered no such evidence of retaliatory conduct here, thus failing to establish causality, and ultimately, failing to establish a prima facie case of retaliation.

**B. Ninth Cause of Action: Intentional Infliction of Emotional Distress**

Brown correctly noted that there are four elements required to prove a prima facie case of IIED: "the wrongdoer's conduct must be intentional or reckless; the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; there must be a causal connection between the wrongdoer's conduct and the emotional

distress and the distress suffered must be severe." *Morgan v. Bird*, 289 S.W.3d 222, 228 (Ky. Ct. App. 2009) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)). Assuming *arguendo* that Brown can prove the first, third, and fourth elements, she has completely failed to demonstrate that the individual defendants engaged in any conduct which was "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Id.*

Brown argues four incidents support her claim of IIED, namely, that Defendant Stephanie Northington took Brown into a storage closet, pointed a pencil at her, and yelled at Brown; that Defendant Dewey Crowe slammed his hand into his fist and yelled at Brown; that Brown was forced to ask permission to leave her work station; and that Brown was placed on an involuntary leave of absence and eventually terminated. [Resp. Show Cause Order 9, Record No. 86.] Again, assuming, *arguendo*, that Brown has supported each of these allegations with admissible evidence, and reading all of the facts in the light most favorable to Brown, these incidents do not support a claim for IIED.

In support of her argument to the contrary, Brown cites *Kroger Co. v. Willgruber*, 920 S.W.2d 61 (Ky. 1996), in which the Kentucky Supreme Court found that the plaintiff supported a claim for IIED because "actions taken by his supervisors at the Kroger Company were specifically designed to exploit an emotional weakness in

9

Willgruber about his sensitivities and anxieties, meeting the definition of 'outrageous conduct.'" [Resp. Show Cause Order 8, citing *Kroger Co. v. Willgruber*, 920 S.W.2d at 67, Record No. 86.] Brown goes on to argue that "[s]imilar to the Kroger case, the Defendant supervisors specifically designed their conduct to exploit an emotional weakness in the Plaintiff to cause her to leave the position." [Resp. Show Cause Order 9, Record No. 86.] Brown fails to identify what her "emotional weakness" was or to explicate how, specifically, Defendants exploited that weakness.

Brown states she was the recipient of behavior that is nothing more than distasteful and extremely rude. The incidents between Brown and Northington and Brown and Crowe evidence a lack of manners and professionalism on the parts of Northington and Crowe. The requirement that Brown alert her supervisor prior to leaving her work area may have been annoying or embarrassing. These incidents and requirements, however, do not evidence conduct that "offends against the generally accepted standards of decency and morality." *Morgan v. Bird*, 289 S.W.3d at 228. The Kentucky Supreme Court has stressed "that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting or will have his feelings hurt, is not enough." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 -792 (Ky. 2004)(citing *Craft v. Rice*, 671 S.W.2d 247, 250 (Ky. 1984))

10

As stated in the Court's Memorandum Opinion and Order [Record No. 81], IIED in Kentucky:

> is a very high standard to satisfy. For example, Kentucky courts declined to find that a nurse [who] told a patient who had just delivered a stillborn baby to "shut up," or a citizen who erected a billboard in his yard declaring that his neighbor was a child molester, acted outrageously, intolerably or "beyond all decency." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1,3 (Ky. 1990); *Allen v. Clemons*, 920 S.W.2d 884 (Ky. Ct. App. 1996). . .
>
> . . . [The conduct in this case] is not so "intolerable" that it offends "decency and morality," when it is understood in the context of other decisions regarding claims of intentional infliction of emotional distress.

[Memorandum Opinion and Order 25-6, Record No. 81.]

Furthermore, even discriminatory termination of an employee does not rise to the level of outrageous conduct to support a claim of IIED. *Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 572 (Ky. Ct. App. 2005); *See also Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999). Therefore, Brown cannot claim that her termination was conduct which was "outrageous" enough to rise to the level of IIED.

Additionally, Brown has offered no evidence or even allegations in her response to the Show Cause Order of conduct of Defendants George Dillon, Kay Lail Bryant or Leslie Jarvis which supports a claim of IIED. Brown included in her exhibits a series of e-mails between Jarvis and John Bryant, the deputy director of the Division of Building Inspection, but these e-mails merely

11

discuss the implementation of a new "smoke break" policy. There is nothing offensive or outrageous, by any standard, contained in these e-mails. Brown has not supported her allegations of IIED against Dillon, Kay Bryant, or Jarvis with even a scintilla of evidence.

The Court finds that Brown has not come forth with sufficient evidence to support a prima facie case of IIED, thus, the claims contained in ninth cause of action against the individual defendants must be dismissed.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** that Brown's forth and ninth causes of action are **DISMISSED**.

This the 15th day of April, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge