UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**CENTRAL DIVISION at LONDON**

| | |
|---|---|
| PAULA B. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Case No. |
| ) | 5:08-cv-500-JMH |
| LEXINGTON-FAYETTE URBAN ) | |
| COUNTY GOVERNMENT DEPARTMENT ) | **MEMORANDUM OPINION & ORDER** |
| OF PUBLIC WORKS, et. al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendants Lexington-Fayette Urban County Government ("LFUCG"), Dewey Crowe, George Dillon, Stephanie Northington, Kay Lail Bryant and Leslie Jarvis' (collectively, "Defendants") motion for summary judgment (D.E. 111). Plaintiff Paula Brown has responded (D.E. 116), and Defendants have replied (D.E. 117). Thus, this motion is now ripe for decision. For the reasons stated herein, Defendants' motion for summary judgment is granted.

**BACKGROUND**

Plaintiff, an African-American woman, was employed by LFUCG from 2001 until her termination in 2008. (D.E. 1, Complaint, at 7; D.E. 13, Amended Complaint, at 12). In March and April of 2008, Plaintiff engaged in two protected employment activities by filing complaints against LFUCG with the Equal Employment

Opportunity Commission (EEOC) and the Occupational Safety and Health Association (OSHA). (D.E. 1, Complaint, at 10).

Soon after Plaintiff filed these complaints, two events happened that are relevant to the resolution of this motion. First, on May 1, 2008, a customer came to Plaintiff's desk to request several permits, and Plaintiff asked a receptionist for assistance. (D.E. 111-5, Crowe Affidavit, at 2; D.E. 111-2, Excerpts from Plaintiff's Deposition, at 4). Plaintiff's supervisor, Dewey Crowe, saw her ask for this assistance and immediately instructed her to return to her workstation. (D.E. 111-5, Crowe Affidavit, at 2; D.E. 111-2, Excerpts from Plaintiff's Deposition, at 4). Plaintiff began arguing with Mr. Crowe, and, although she returned to her workstation momentarily, she again stopped assisting the customer and went to Mr. Crowe's office. (D.E. 111-5, Crowe Affidavit, at 2-3; D.E. 111-2, Excerpts from Plaintiff's Deposition, at 5-6).

When Mr. Crowe instructed her once more to return to her workstation and assist the customer, she refused and went elsewhere to file an internal complaint against Mr. Crowe. (D.E. 111-5, Crowe Affidavit, at 3; D.E. 111-2, Excerpts from Plaintiff's Deposition, at 6). As a result of Plaintiff's conduct, LFUCG suspended her for forty hours without pay for insubordination, defined under their disciplinary code as the

". . . direct refusal to obey a supervisor's work related order or failure to follow directions or instructions." (D.E. 111-5, Crowe Affidavit, at 4; D.E. 111-6, Definition of Insubordination).

After this incident, Plaintiff requested to transfer to a different department at LFUCG so she would no longer have to work under Mr. Crowe's supervision. (D.E. 111-7, Emails, at 8). LFUCG denied Plaintiff's request and told her that she could either return to her current position or quit her job altogether. (D.E. 111-7, Emails, at 8). Angered over this decision, Plaintiff sent several emails throughout June 2008 to various personnel at LFUCG indicating her emotional distress. (D.E. 98-2; 98-3; 111-7). For example, she sent an email at 12:16 a.m. on June 5, 2008, which read: "Stress sometimes keeps us awake. I remind you once again 'I fear going back to Bldg. Insp'." (D.E. 111-7, Emails, at 5). A few days later, she sent another email complaining of emotional distress, concentration loss, accidents, mistakes, physical symptoms and chest pains. (D.E. 111-7, Emails, at 8). She also likened returning to her former department as forcing a rape victim to return to the rape scene. (D.E. 111-7, Emails, at 8).

After Plaintiff sent these emails, Leslie Jarvis, the former human resources manager at LFUCG, found it appropriate to

3

schedule a fitness for duty evaluation for Plaintiff. (D.E. 111-7, Jarvis Affidavit). Ms. Jarvis feared that the distress indicated by Plaintiff in the emails would negatively impact her ability to perform her job and interact with her coworkers. (D.E. 111-7, Jarvis Affidavit). Plaintiff was referred to a psychiatrist to complete this evaluation on July 7, 2008, and was advised that she could not return to work until the medical provider gave permission for her to do so. (D.E. 98-5, July 17 Letter from Jarvis to Plaintiff).

Although the psychiatrist found that Plaintiff was capable of returning to work on August 18, 2008, LFUCG did not permit her to return until October 13, 2008. (D.E. 98-1, Letter from Behavioral Medicine Network; D.E. 98-6, Return to Work Performance Expectations). Ms. Jarvis explained that the delay was due to LFUCG's desire to speak with the medical provider, who was then vacationing, about how to best ensure Plaintiff's smooth transition back to the workplace. (D.E. 111-7, Jarvis Affidavit; D.E. 98-20, 9/1/08 Emails between Allen and Jarvis). Ms. Jarvis also explained that some time was necessary to implement the medical provider's suggestions. (D.E. 111-7, Jarvis Affidavit; D.E. 98-20, 9/1/08 Emails between Allen and Jarvis; D.E. 98-19, 8/12/08 Emails between Jarvis and Kelly).

4

Moreover, although Defendants did not initially pay Plaintiff for this time off, it was LFUCG's standard policy to require employees to use their accumulated leave while out for medical reasons. (D.E. 98-5, July 17 Letter from Jarvis to Plaintiff; D.E. 98-20, 9/1/08 Emails between Allen and Jarvis). Notably, as soon as the medical provider approved her return on August 18, 2008, Defendants immediately discussed reinstating Plaintiff's pay while they were waiting to speak with the physician and transition Plaintiff back into the workplace. (D.E. 98-20, 9/1/08 Emails between Allen and Jarvis). Upon Plaintiff's return, LFUCG did indeed pay Plaintiff back for all of her unpaid leave time. (D.E. 117-1, Payment Documents).

In 2008, Plaintiff filed a lawsuit in this Court alleging a litany of employment discrimination and retaliation claims. (D.E. 1, Complaint). This Court granted summary judgment to Defendants on all claims and specifically dismissed Plaintiff's retaliation claim on the grounds that Plaintiff failed to establish a *prima facie* case of retaliation. (D.E. 99, 100). Subsequently, Plaintiff appealed to the Sixth Circuit on the retaliation issue, which held that Plaintiff had indeed met the "low burden" of a *prima facie* case of retaliation and remanded the matter for further proceedings. Thus, the only remaining

5

issue in this case is whether Defendants retaliated against Plaintiff for engaging in protected employment activities.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party "cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In considering a motion for summary judgment, the court must construe the facts in the light most favorable to the nonmoving party. *Id.* at 255.

## ARGUMENT

Under 29 U.S.C. § 2615(b)(1), an employer may not "discharge or in any other manner discriminate against any individual because such individual . . . has filed any

6

charge . . . related to this subchapter." § 2615(b)(1). When, as here, there is no direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. Under this framework, if the plaintiff establishes a *prima facie* case, then the burden shifts to the employer to articulate a legitimate non-discriminatory reason for an adverse employment action taken against the plaintiff employee. *Id.* at 802. If the employer satisfies this burden of production, the burden shifts back to the plaintiff to show that the employer's proffered reason is pretext for unlawful discrimination. *Id.* The ultimate burden of persuasion remains at all times with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir. 2006).

In this case, Plaintiff argues that Defendants suspended her for forty hours without pay and mandated that she complete a fit for duty evaluation in retaliation for filing EEOC and OSHA complaints in March and April of 2008. Under step one of the *McDonnell Douglas* burden shifting scheme, the Sixth Circuit panel held on appeal that Plaintiff established a *prima facie* case of retaliation for these two adverse employment actions. (D.E. 107, Sixth Circuit Opinion, at 12-13).

Further, Defendants met their burden under step two to articulate legitimate nondiscriminatory reasons for taking these actions against Plaintiff. First, Defendants explained that Plaintiff's suspension resulted from her insubordinate conduct on May 1, 2008, when she refused to return to her workstation to assist a customer after being told to do so three times. Because "an employee's work violations constitute a legitimate nondiscriminatory reason for adverse employment decisions," Defendants undoubtedly met their burden. *Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998).

Second, Defendants also articulated a legitimate nondiscriminatory reason for placing Plaintiff on unpaid leave so that she could procure a fit for duty evaluation. Specifically, Defendants produced various emails written by Plaintiff throughout June 2008 that objectively justify Defendants' mandate that she see a medical professional, as the emails clearly indicated her emotional distress and brought her overall capability to continue working at LFUCG into question. (D.E. 98-2; 98-3; 111-7); *see also Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 813 (6th Cir. 1999) ("an examination ordered for valid reasons can[not] prove discrimination"); *Stone v. Bd. of Dirs. of Tenn. Valley Auth.*, 35 F. App'x 193, 200 n.1 (6th Cir. 2002) (inappropriate expressions of anger constituted

8

a legitimate, non-retaliatory reason to require the plaintiff to undergo a fitness for duty examination); *Barnes v. Baxter*, Civil Action No. 4:05CV-152-M, 2007 WL 781315, at *3 (W.D. Ky. Mar. 12, 2007) (noting that the plaintiff's involvement in angry confrontations at work constituted a legitimate nondiscriminatory reason for his employer to require him to undergo a psychological examination).

In her response brief, Plaintiff argues that Defendants failed to produce legitimate nondiscriminatory reasons for delaying her return to work after the medical professional cleared her and for failing to pay her during this time off "until her lawyer got involved." (D.E. 116, Plaintiff's Response, at 7). Plaintiff's argument is without merit. First, although it is undisputed that Plaintiff was not allowed to return to work until October 13, 2008, despite being cleared to return on August 18, 2008, Defendants explained that the delay was due to their desire to confer with the medical professional about how to reintegrate Plaintiff into her work environment and successfully incorporate his suggestions into her arrival. (D.E. 111-7, Jarvis Affidavit; D.E. 98-21, 9-3-08 Email from Jarvis to Crowe).

Second, Defendants also explained that under their standard policy, all employees who were unable to return to work under

9

physician instructions were required to use accumulated leave balances instead of receiving paid leave. (D.E. 98-5, July 17 Letter from Jarvis to Brown). Moreover, once Plaintiff was cleared to return to work, Defendants discussed placing her on administrative leave with pay while they were waiting to communicate with the doctor about how to best transition Plaintiff back into the work environment. (D.E. 98-20, 9/1/08 Emails between Allen and Jarvis). Consistently, upon Plaintiff's return, she was paid in full and her unpaid leave time was fully restored.[1] (D.E. 117-1, Payment Documents). These logical and nondiscriminatory reasons offered by Defendants are sufficient to shift the burden back to the Plaintiff. *See Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) ("the defendant need not *prove* a nondiscriminatory reason for [its actions], but need merely *articulate* a valid rationale") (citing *St. Mary's Honor Ctr.*, 509 U.S. at 514). The Sixth Circuit panel concurred on Plaintiff's appeal that Defendants provided legitimate nondiscriminatory reasons for actions taken against Plaintiff. (D.E. 107, Sixth Circuit Opinion, at 13) ("[W]ithout question, the defendant has offered

---

[1]Plaintiff argues that evidence of retaliatory animus is evident because Defendants did not actually pay her until her lawyer got involved. This is, however, pure speculation. There is no evidence that Defendants planned to do anything but restore her pay once she returned to work, as they indeed did.

10

legitimate explanations for the treatment of the plaintiff that have no relation whatsoever to her filing of the EEOC and OSHA complaints.").

At this juncture, the burden shifted back to Plaintiff under step three of the *McDonnell Douglas* burden shifting scheme. Plaintiff, however, failed to carry her burden to show that Defendants' legitimate nondiscriminatory reasons were pretext for discrimination. To raise a genuine issue of fact as to pretext and defeat a summary judgment motion, a plaintiff must show that the employer's stated reason for the adverse action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008)).

Plaintiff fails to indicate which basis she is relying on to show pretext in this case. However, because Plaintiff neither disputes that she refused to assist a customer after being thrice told to do so on May 1, 2008, nor disputes that she authored the emails indicating her emotional distress in June 2008, it is clear that Plaintiff cannot prove pretext by showing that the proffered reasons have no basis in fact. Moreover, because Plaintiff has not shown that similarly situated

11

employees were treated differently, neither can Plaintiff prove that Defendants' explanation was insufficient to motivate discharge. *See Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (*overruled on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167, 179 (2009)) (holding that the third showing typically consists of evidence that other similarly situated employees were treated differently than the plaintiff). Thus, by elimination, Plaintiff had to show that Defendants' reasons did not actually motivate their actions. *See Russell v. Univ. of Toledo*, 537 F.3d 596, 607 (6th Cir. 2008) (citing *Manzer,* 29 F.3d at 1084). In other words, she had the burden to show "circumstances which tend[ed] to prove that an illegal motivation was *more* likely than that offered than that offered by the defendant." *Id.*

Quite simply, Plaintiff has failed to articulate any evidence to support an argument of pretext even when the record is reviewed in the light most favorable to her. First, in Plaintiff's affidavit attached to her response brief, she does not even mention being placed on leave for her fit for duty evaluation. (D.E. 116-1, Plaintiff Affidavit). Moreover, while she does discuss her suspension in her affidavit, she states only that Mr. Crowe's allegation that she failed to follow his orders on multiple occasions is "positively untrue", and "Mr.

12

Crowes suspending and terminating me was for other reasons." (D.E. 116-1, Plaintiff Affidavit). These mere denials of Defendant's proffered reasons without substantiation are insufficient to withstand Defendants' motion for summary judgment. *See Mitchell v. Toledo Hosp.*, 964 F.3d 577, 585 (6th Cir. 1992).

Plaintiff's case is unlike *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 437 (6th Cir. 2009), in which the Sixth Circuit distinguished *Mitchell* because the plaintiff did more than merely deny his employer's legitimate reasons by contesting material facts underlying the incident. *Id.* at 437-38. Therefore, the Sixth Circuit found that the *Hamilton* plaintiff met his burden to show pretext, and reversed accordingly. *Id.* By contrast, Plaintiff has never contested the material facts underlying Defendants' actions against her- namely, that she refused to return to her workstation on May 1, 2008, and that she wrote the emails that brought her fitness for duty into question. (D.E. 111-2, Excerpts from Plaintiff's Deposition, at 3-8; D.E. 116-1, Plaintiff Affidavit). Further, the facts that Plaintiff does contest are immaterial. For example, she contests in her affidavit that Mr. Crowe had ever given her any prior directives to refrain from asking her coworkers for help. (D.E. 116-1, Brown Affidavit). However, whether or not this is

13

true is irrelevant, as the reason given for Plaintiff's suspension was that she refused to return to her workstation three times after being asked to do so on May 1, 2008, a fact she readily admits. (D.E. 111-2, Excerpts from Plaintiff's Deposition, at 3-8).

Although the affidavit of her former coworker, Christine Wu, is in the record and is presumably offered by the Plaintiff in opposition to Defendants' summary judgment motion,[2] Wu does not mention Plaintiff's suspension nor her fit for duty evaluation except to say that Plaintiff told her that she did not get paid after her fit for duty evaluation until her "lawyer made the city pay her back pay." (D.E. 32-5, Wu Affidavit, at 3; D.E. 85-3, Wu Affidavit). This is inadmissible hearsay, and, as discussed above, it is pure speculation that Defendants paid Plaintiff only because she obtained legal representation. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence."); *Mitchell*, 964 F.2d at 584-86

---

[2]Plaintiff does not actually point to any affidavits in her response to Defendants' motion for summary judgment except her own. (D.E. 116, Plaintiff's Response). However, earlier in this litigation in response to a show cause order as to why her retaliation claim should not be dismissed, Plaintiff filed affidavits that could plausibly have been offered to support Plaintiff's pretext argument. (D.E. 85-3, 85-9, 85-18). Thus, these affidavits will be reviewed here.

14

(district court correctly found that affidavit containing hearsay was an improper Rule 56 affidavit "because it . . . did not set forth facts that would be admissible into evidence.").

Wu also affies that her supervisor told her not to talk to Plaintiff, that Plaintiff was largely disliked by her peers, and she relays a particular incident in which she observed other employees reading Plaintiff's personal emails. (D.E. 32-5, Wu Affidavit, at 2, 4; D.E. 85-3, Wu Affidavit). However, Ms. Wu's recollections are largely irrelevant to the motion at issue and fail to show that Defendants' actions were pretextual. Indeed, while Ms. Wu's affidavit may indicate that her coworkers did not like Plaintiff, the anti-retaliation provision does not protect against "petty slights or minor annoyances that often take place at work." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Mitchell*, 964 F.3d at 585 ("rumors, conclusory allegations and subjective beliefs" are "wholly insufficient evidence to establish a claim of discrimination as a matter of law."). For these same reasons, the affidavit from John Firth Stewart, which discusses this same instance of Plaintiff's coworkers breaking into her email account, is similarly irrelevant. (D.E. 85-18, Stewart Affidavit).

Finally, this Court agrees with Defendants that the affidavit from Kim Asher also fails to support that Defendants'

15

actions were pretextual. (D.E. 21-4, Asher Affidavit). Like the Wu affidavit, Ms. Asher, who was not employed with LFUCG after October 2007, does not mention the adverse employment actions at issue in this case because she was not employed by LFUCG during the time period that Plaintiff filed her EEOC and OSHA complaints and afterwards. (D.E. 21-4, Asher Affidavit). Instead, Ms. Asher states that when she was first hired, her supervisor told her Plaintiff was "crazy" and that they (i.e. Defendants) had "ways of getting rid of people like her." (D.E. 21-4, Asher Affidavit). First, however, this affidavit does not meet the requirements of Rule 56(c), as it is based on hearsay evidence. *See* Fed. R. Civ. P. 56(c). Moreover, because Ms. Asher was not employed by LFUCG when Plaintiff filed her EEOC and OSHA complaints and when Defendants subsequently took adverse employment actions against her, Ms. Asher's implication that Defendants' attitude toward Plaintiff is what led to her suspension and fit for duty evaluation is mere speculation, particularly since Defendants have outlined objectively legitimate reasons for taking those actions against her.

The Court notes that there are more affidavits dispersed throughout the record of this case. However, to the extent that there may be specific evidence scattered throughout those remaining affidavits to support Plaintiff's argument for

16

pretext, it is not this Court's job to scour the record more than it already has to find evidence in Plaintiff's favor, particularly when Plaintiff herself has failed to do so. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.").

Citing the unreported case of *Cantrell v. Nissan N. Am., Inc.*, 145 F. App'x 99 (6th Cir. 2005), Plaintiff argues that she has proven pretext by virtue of her *prima facie* case alone. (D.E. 116, Plaintiff's Response, at 8). However, while Plaintiff is correct that *Cantrell* states that a *prima facie* case can sometimes rebut a defendant's legitimate nondiscriminatory reasons, this is only the case when a plaintiff's *prima facie* evidence is "sufficiently strong." *Id.* at 107 n.2.

Here, Plaintiff's *prima facie* case pales in comparison to the plaintiff's in *Cantrell*, as it consists only of 1) temporal proximity between the time Plaintiff filed her complaints and her suspension and fit for duty evaluation, and 2) a large workload when she returned in October. (D.E. 107, Sixth Circuit

17

Opinion, at 12-13).  In contrast, the *Cantrell* plaintiff had a ten year history of gross misconduct, but was fired for an alleged workplace violation that was nowhere near as serious as her previous violations within three weeks of filing an EEOC complaint.  *Cantrell*, 145 Fed. App'x at 103.  Thus, whereas there was a good argument from the *prima facie* case alone in *Cantrell* that the plaintiff's EEOC filing was actually "the straw that broke the camel's back," there is no such argument in this case.  *Id.* at 108.

Indeed, there is an abundance of evidence on the record that Defendants continuously tried to make their employment relationship with Plaintiff a successful one, since even after Plaintiff's undisputed conduct and Defendants' actions against her, Defendants kept allowing Plaintiff to return to work and kept trying to reintegrate her into the working environment until her ultimate termination in December 2008.  The fact that Defendants kept trying to make the employment relationship work months after her EEOC and OSHA filings weakens any causal relationship established on the basis of temporal proximity.

Moreover, although the Sixth Circuit noted that Plaintiff's allegations of extra work in October could be a cause for concern, the Sixth Circuit did not issue a holding on this point.  (D.E. 107, Sixth Circuit Opinion, at 13).  Therefore,

18

after careful examination of the record and close analysis, this Court has determined otherwise. Plaintiff complains of extra work upon her return in October, evidenced by a memorandum from her supervisor outlining her performance expectations and the fact that when she was fired in December, her workload was divided between two full-time and three part-time preexisting employees. (D.E. 98-6, Performance Expectations; D.E 32-5, Wu Affidavit, at 7). However, the performance expectations memorandum appears to be a mere outline of Plaintiff's job duties. Plaintiff has never contested that her job description generally encompassed all such duties.

Although Plaintiff argues that there was a backlog of work waiting for her on her return, such as, for example, "loads of papers in my box" and three and a half months' worth of HVAC book updates, she does not appear to have been given a specific deadline in which to complete these tasks. (D.E. 98-6, Performance Expectations, at 4). Moreover, while it is true that Plaintiff's workload was split amongst two full-time and three part-time employees when she was eventually terminated, this is unsurprising given that those employees already worked for LFUCG and took on Plaintiff's tasks in addition to their own. (D.E 32-5, Wu Affidavit, at 7). Without more, this evidence does not create a genuine issue of fact as to whether

the accumulation of work was somehow motivated by Plaintiff's filing of a grievance or complaint. Therefore, unlike in *Cantrell*, Plaintiff's case, which has always been "at best - tenuous," is not sufficiently strong such that pretext can be inferred from her *prima facie* case. (D.E. 117, Sixth Circuit Opinion, at 1).

## CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (D.E. 111) shall be **GRANTED**.

This the 5th day of November, 2012.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge